[Civ. No. 2559. Second Appellate District, Division Two.—February 26, 1920.]

In the Matter of the Application of JULIUS SEICK et al., for Initial Registration of Title to Land.

[1] LAND TITLE LAW—SALE OF PROPERTY FOR DELINQUENT TAXES—FILING OF NOTICE WITH REGISTRAR—PROVISION MANDATORY.—The provision of section 77 of the land title law fixing the time within which a notice of tax sale must be filed with the registrar is mandatory, it being expressly provided in said section that unless such notice is filed as therein provided, to wit, within five days after the sale to the state, the land is "forever released from the effect of such sale."

[2] ID.—STATUTORY CONSTRUCTION—INTENTION OF LEGISLATURE.—Whether a particular statutory provision is mandatory or directory depends upon the intention of the legislature, to be ascertained from a consideration of the object of the statute and the consequences that result from construing it one way or the other.

[3] ID.—TAX SALE—FAILURE TO FILE NOTICE WITH REGISTRAR—REDEMPTION—TAX LIEN.—Where a tax sale is nullified by the failure to file the notice thereof with the registrar within the five days as prescribed by the land title law, the five-year period for redemption before a deed can issue to the state does not commence, though the tax lien continues as a valid encumbrance.

APPEAL from an order of the Superior Court of Los Angeles County directing the entry of a memorial under the land title law. John M. York, Judge. Reversed.

The facts are stated in the opinion of the court.

Earl Newmire for Appellants.

A. J. Hill, County Counsel, and J. Allen Davis, Deputy County Counsel, for Respondents.

FINLAYSON, P. J.—Prior to June 27, 1917, Xenophon Bouris was, and is, the "registered owner" of a lot in Los Angeles County, registered under the land title law, an initiative measure adopted by the people at the election of

2.  When word "may" in statute is to be deemed mandatory, note, 6 L. R. A. (N. S.) 340.

November 3, 1915 (Stats. 1915, p. 1932), whereby a system for the registration of land titles is provided. This law is of the class commonly known as Torrens laws, the designation being taken from the name of Sir Robert Torrens, by whom the first Torrens law, enacted in South Australia in 1858, was drawn. On June 27, 1917, the county tax collector sold the lot in question to the state by declaring it sold and making on the delinquent assessment list the entry "Sold to the State," as provided by section 3771 of the Political Code. He did not, however, file with the county registrar of titles any notice of such sale within five days thereafter, as required by section 77 of the land title law.

The Torrens law provides a complete scheme of procedure whereby, as the result of a decree of court in a proceeding inaugurated by petition filed by the owner, any land may be brought under the operation of the act. The purpose of the law is that there shall be in the county registrar's office a book, known as the "register of titles," the leaves or folia of which are certificates of title, each "certificate of title" containing the facts relative to the title of the particular piece of property described therein and which has been brought under the act. Each leaf or folium is evidence of the title to the property therein described. So that an intending purchaser, lessee, or mortgagee, or other person having dealings with the property, may go to the registrar's office, examine the leaf whereon the title to that property is registered, and at once, with safety, take a deed, lease, or mortgage from the owner of the property, file it, and have himself accordingly registered upon the leaf or folium as owner, lessee, or mortgagee. The title is to be set down on the leaf, or certificate of title, and is to be registered in the name of the owner. It is to be stated to be subject to such liens, etc., as are specified. The system involves, in the first place, the initial registration of title, or, as it is called, "bringing the land under the act," and, secondly, all subsequent matters. Such subsequent matters as leases, mortgages, or other charges upon the land, are shown by "memorials," noted upon the folium or certificate by the registrar of titles. For an interesting note upon the Torrens system of land title registration reference may be had to L. R. A. 1916D, page 14 et seq.

Section 77 of the land title law of this state, after providing that if any land registered under the act shall be sold to any private individual for any tax or assessment, such purchaser, within five days thereafter, shall file in the office of the registrar of titles a written notice of such purchase, and the registrar shall thereupon enter a "memorial" thereof upon the certificate of title, further provides for the filing of a similar notice by the county tax collector in all cases where land registered under the act has been sold to the state for delinquent tax or assessment. The language of this part of the section is: "In case the state or a municipal corporation becomes the purchaser of land sold for any tax or assessment, the tax collector or other office attending to such purchase, shall, within five days thereafter, file with the registrar a notice to that effect. And thereupon the registrar shall enter a memorial thereof upon the register and shall mail notices to interested parties, as in the case of an individual purchaser. Unless such notice is filed as herein provided, the land shall be forever released from the effect of such sale, and no deed shall be issued in pursuance thereof." (Stats. 1915, p. 1945.)

In the instant case the tax collector neglected to present to the registrar of titles notice of the tax sale until the eighth day thereafter. Because the notice was not presented within the five days provided by the act, the registrar refused to receive it. It was not filed by the registrar until January 14, 1918, on which day he filed it pursuant to the order of court from which this appeal is taken. Meanwhile, viz., on January 10, 1918, a release of a mortgage that had been a prior lien on the property, and a new mortgage, executed by the registered owner, Xonophon Bouris, to one Thomas H. Stafford, were presented to the county registrar of titles for registration and for "memorials" thereof on the owner's certificate of title. The registrar refused to accept this release and likewise the new mortgage to Stafford. Instead, being in doubt as to the proper memorials to make respecting the tax sale, the release of the old mortgage and the making of the new one, he referred the question, by certificate in due form, to the superior court for its decision. This he is expressly authorized to do by section 99 of the land title law. (Stats. 1915, p. 1948.) On January 14, 1918, the court decided the question so referred to it, and made its

order whereby, after finding the facts to be substantially as we have stated them, ordered that "the registrar of titles be, and he hereby is, instructed and authorized to accept said above first-mentioned notice of sale for delinquent taxes for registration, and to enter same as a memorial upon certificate of title No. 1871, Xenophon Bouris, registered owner, and to show same as a prior lien to the above-mentioned mortgage." As we construe this order, it is more than a direction to the registrar to enter a memorial showing the tax *lien* to be superior to the mortgage. It is tantamount to a direction that he note on the owner's certificate a memorial showing a valid and subsisting tax *sale* to the state, made prior to the execution of the new mortgage to Stafford. At any rate, appellants and respondents have placed this construction upon the order, and we, therefore, shall adopt their interpretation as correct, and shall decide accordingly, the one question presented by the briefs for our determination.

From the order of the court so made on January 14, 1918, the registered owner and the mortgagee under the new mortgage, Thomas H. Stafford, have taken this appeal, claiming that the release of the old mortgage and the lien of the new mortgage should, by appropriate "memorials," be shown on the owner's certificate of title as prior to the tax sale to the state.

[1] As we have shown, the land title law, in section 77, specifically declares that unless the notice of tax sale be filed "*as herein provided*"—which, of course, means within the five days therein prescribed—"the land shall be forever released from the effect of such sale." Respondents argue that the provision of the act fixing the time within which the notice shall be filed is not mandatory, but directory only. We cannot accede to this construction of the plain and unambiguous language of the law.

[2] Whether a particular statutory provision is mandatory or directory depends upon the intention of the legislature, to be ascertained from a consideration of the object of the statute and the consequences that would result from construing it one way or the other. (36 Cyc. 1157.) In Black on Interpretation of Laws, page 343, the rule is stated as follows: "When a statute specifies a time at or within which an act is to be done by a public officer or body, it is generally held to be directory only as to the time, and not mandatory,

unless time is of the essence of the thing to be done, or the language of the statute contains negative words, or shows that the designation of the time was intended as a limitation of power, authority or right." Here, not only does the language of the statute show that the designation of time was intended as a limitation upon the authority to file the notice of tax sale—the language is that unless the notice be filed "as herein provided," i. e., within the five days, the land "shall be forever released from the effect of such sale" —but it may readily be seen that time is of the essence of the thing to be done. It is a matter of substance, vitally affecting the rights of the owner of the registered land, and the rights of subsequent purchasers or encumbrancers.

During the five-year period allowed for redemption from a tax sale—the period intermediate the sale of the property to the state under section 3771 of the Political Code and the issuance of a deed to the state as provided by section 3785 of the same code—the title to the property continues in the taxpayer, subject to the lien in favor of the state created by the assessment and tax levy. The only practical effect of a sale of property under section 3771 is to start running the five years within which redemption can be effected and at the expiration of which a deed may be issued to the state. (*Crocker* v. *Scott,* 149 Cal. 596, [87 Pac. 102].) But this period within which the taxpayer may redeem commences running from the date of the sale to the state, not from the date of the notice of sale. That is, the commencement of the five-year redemption period is not postponed until the filing of the notice that section 77 of the land title law requires to be filed in all cases where the property that has been sold for taxes is property that has been brought under the provisions of the act.

It is of the utmost importance to one about to loan money secured by a mortgage on real property that he shall know whether the land has been sold for taxes, and, if it has, how long he may safely wait before effecting a redemption in the event that it shall become necessary for him to redeem in order to protect his mortgage security. As we have said, the prime purpose of the Torrens law is that there shall be in the registrar's office, in the book known as the "register of titles," a leaf or folium to which any person dealing with any particular piece of land that has been brought under

the act may look in order to ascertain the exact condition of the title before purchasing, leasing, or loaning money secured by a mortgage. If the code or any statute had provided that, as to land that has been brought under the operation of the land title law, the time to redeem from a tax sale shall commence to run only from the filing of the notice of sale that is required by section 77 of that law, it doubtless would be a matter of indifference to a prospective purchaser, lessee or mortgagee whether the notice of the tax sale was presented to the registrar and filed within five days, or at a later date. But the code makes no exception in the case of lands registered under the Torrens law. It does not declare that the time to redeem shall commence to run only from the filing of the notice of sale prescribed by section 77 of the land title law. Without exception, the time for redemption commences to run from the date of the tax sale. (Pol. Code, sec. 3780.) If, therefore, it were held that the notice required by section 77 of the land title law need not be filed within the five days prescribed therefor, that is, if that provision were held to be directory only and not mandatory, it might happen that the notice of a tax sale would not be filed until shortly before the expiration of the five-year period that the Political Code allows for redemption. In the meantime, a person might purchase the land, or lease it, or take a mortgage on it, without knowing when the time for redemption would expire, unless he looked elsewhere than the registered certificate of title and the memorials thereon. But the principal purpose of the land title law is to obviate the necessity for looking elsewhere than the registered certificate of title and the memorials noted thereon.

[3] For these reasons we think that, as declared by the emphatic language of the act itself, the land is "forever released from the effect of such sale" if the notice of tax sale be not filed by the tax collector with the registrar of titles within five days after the sale to the state. The effect of the failure to file the notice of the sale as provided by the act is completely to nullify the sale, and produce a situation such as would exist had no tax sale ever been made or attempted.

We do not mean to say that this necessarily means that another sale may not be made by the tax collector by beginning all over again. As to this, however, it is not necessary

to express an opinion; though we may say that, after a cursory examination of the code sections relative to tax sales, we are inclined to think that the following is substantially a correct view of the situation respecting the tax collector's power to proceed *de novo:* The tax lien remains; the land title law expressly declares that the land, if the notice of the tax sale be not filed as in that law provided, "shall be forever released from the effect of such sale"; this means that the sale is completely nullified by the failure to file the notice within the prescribed time; the situation is, therefore, precisely what it would have been had no sale ever been attempted.

Though the tax lien continues as a valid encumbrance on this land, the five-year period for redemption before a deed can issue to the state has not commenced. Nor can it commence until a sale shall have been made under section 3771 of the Political Code, after proceedings therefor have been taken *de novo*—assuming that there is no statutory inhibition against new proceedings looking to a new and enduring tax sale—followed by the filing of the notice of such second sale with the county registrar of titles within the prescribed five days.

For these reasons we think it was error to direct the registrar of titles to enter a memorial showing the tax sale as an existing and valid sale made prior to the mortgage that the registered owner had executed to his mortgagee, Stafford.

The order is reversed, with directions to the trial court to enter an order consonant with the views herein set forth.

Sloane, J., and Thomas, J., concurred.