Michael ANTONIS

v.

Joseph J. LIBERATI

v.

Janice Jeschke Beall, Recorder of Deeds of Beaver County, and Murat Mouradian and Louise M. Garafola, Co–Administrators of the Estate of Boghas Paul Mouradian, deceased.

Appeal of Joseph J. Liberati.

Michael Antonis

v.

Joseph J. Liberati

v.

Janice Jeschke Beall, Recorder of Deeds of Beaver County, and Murat Mouradian and Louise M. Garafola, Co–Administrators of the Estate of Boghas Mouradian, Deceased.

Appeal of Janice Jeschke Beall, Recorder of Deeds of Beaver County.

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 2003.

Decided April 21, 2003.

Marie M. Jones, Pittsburgh, for appellant, J. Beall.

Mitchell P. Shahen, Aliquippa, for appellant, J. Liberati.

Donald J. Balsley, Pittsburgh, for appellees.

BEFORE: COLINS, President Judge, LEAVITT, Judge, FLAHERTY, Senior Judge.

OPINION BY PRESIDENT JUDGE COLINS.

Joseph Liberati and Janice Jeschke Beall appeal from an order of the Court of Common Pleas of Beaver County that denied their post-trial motions and entered judgment against them and in favor of Michael Antonis. We affirm the order of the trial court as it applies to Liberati and we remand this matter to the trial court with instructions to enter judgment notwithstanding the verdict in favor of Beall.

Michael Antonis accepted a note and mortgage from Boghas Paul Mouradian to secure the sum of $44,450.00 that Antonis had loaned to Mouradian. The property subject to the mortgage was a 16–acre tract of unimproved land in Beaver County. The mortgage and note were prepared by attorney Joseph J. Liberati, who delivered the documents to the office of the Recorder of Deeds for Beaver County on December 19, 1997. Antonis called Liberati on several occasions to ask if the documents had been recorded. Liberati repeatedly assured Antonis that everything was in order. However, in the process of recording the documents, a clerk in the Recorder's office misspelled Mouradian's name and the mortgage was indexed incorrectly. As a result, Mouradian was later able to sell the property without disclosing the existence of the mortgage and without paying anything to Antonis. Antonis read about the sale in a newspaper and called Liberati, who a few days later told Antonis about the clerical error. Liberati recommended that Antonis file suit against the Recorder of Deeds. Antonis first sued the purchasers of the property, who successfully defended on the grounds that they had no notice of the mortgage. Antonis then sued Liberati, who joined the Record-

er of Deeds, Janice Jesche Beall, and Mouradian's Estate. The jury found in favor of Antonis and against Beall, Liberati, and the Estate. The trial court denied post-trial motions filed by Beall and Liberati, and these appeals followed.

The questions we are asked to consider are 1) whether Beall, a municipal employee, can be found liable for damages under the facts of this case pursuant to 16 P.S. § 9852;[1] 2) whether Beall is immune from liability pursuant to the law known as the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541–8564 (Tort Claims Act); 3) whether Liberati had a duty to ensure that the mortgage was indexed correctly; and 4) whether Mouradian's fraud was an intervening act that relieves Liberati from liability.[2]

■ Beall asks us to grant j.n.o.v. or, in the alternative, a new trial. In considering a motion for j.n.o.v. the evidence must be considered in a light most favorable to the verdict winner, who must be given the benefit of every reasonable inference of fact arising from it, and any conflicts in the evidence must be resolved in their favor. *Firestone v. Schmehl,* 420 Pa. 644, 218 A.2d 324 (1966). An appellate court will not reverse a trial court's grant or denial of post-trial motions absent a manifest abuse of discretion or a clear error of law. *City of Philadelphia v. Benedetto,* 801 A.2d 1276 (Pa.Cmwlth.2002).

We grant j.n.o.v. for Beall because the trial court committed two clear errors of law in refusing to grant her post-trial motions. The first was that it found that Beall was statutorily liable for a typographical error made by a member of her staff, and the second that Beall was not immune to liability pursuant to the Tort Claims Act because it found there was no injury to persons or property in this case as defined by the Act.

The trial court found Beall liable for the clerical error of a member of her staff pursuant to 16 P.S. § 9852 which requires

As soon as said indexes are prepared it shall be the duty of the recorder to index in its appropriate place and manner every deed and mortgage thereafter recorded in his office, at the time the same is recorded, and in case he neglects to do so he and his sureties shall be liable in damages to any person aggrieved by such neglect.

■ This statute was enacted into law in 1875, but the facts of the case before us were addressed almost 100 later by our Supreme Court in *Orris v. Roberts,* 392 Pa. 572, 141 A.2d 393 (1958). In *Orris,* the Court held that a recorder of deeds was not liable for a clerical error made by a member of the Recorder's staff in improperly indexing a judgment note. What the Court said in *Orris* speaks to such an important point of public policy that we will quote it here at length.

The fundamental reason why a public official is not liable for the negligent act of a subordinate is contained in what Chief Justice Gibson recognized over a hundred years ago in *Schroyer v. Lynch,* [8 Watts 453 (Pa.1839)] supra. No government could be constructed on the principle of the master and servant relation, which would make a public officer personally liable for the negligent acts of a subordinate. If the rule were otherwise, the burden which such a liability would impose on public officers (most of

---

1. Act of March 18, 1875. P.L. 32, § 2.

2. As this matter involves no disputed facts and we consider nothing but questions of law, our standard of review is plenary. *Depart-* *ment of Transportation, Bureau of Driver Licensing v. McCafferty,* 563 Pa. 146, 758 A.2d 1155 (2000).

whom serve on fixed modest salaries) would be onerous to the point of being unbearable. If Roberts were to be held liable for the negligence of the indexing clerk in his office under the facts of this case, all public officers would be liable for the negligent acts committed, within the scope of their employment, by all employees under the control of such officers. It is unnecessary to multiply the many illustrations, that readily come to mind, of the dire consequences to which such a rule would lead. It is sufficient to observe that a recovery against a public officer for such a liability might readily consume several years' salary or even the savings of a life-time. Public service would indeed become a perilous venture which could be undertaken safely only by those who are so impecunious as to be permanently execution-proof. 392 Pa. at 585, 141 A.2d at 399.

■ Our Supreme Court's case of *Schroyer v. Lynch*, referred to in *Orris* and written 150 years ago, addressed the liability of a postmaster for the failure of one of his clerks to forward certain items of mail. In *Schroyer* the court found that the postmaster could not be held liable saying, "That the privity which springs from appointment to office constitutes the relation of master to servant betwixt the immediate parties, is a principle on which no government has been, or can be, constructed; the man is the servant of the party that pays him." 8 Watts at 458. The trial court committed a clear error of law in finding that 16 P.S. § 9852 imposes liability on a recorder of deeds under the facts of this case.

■ In her motion for post-trial relief Beall also claimed immunity from liability pursuant to the Section 8541 of the Tort Claims Act which provides, "Except as otherwise provided in this subchapter, no local agency shall be liable for any dam-

ages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." Section 8542(a) of the Act lists eight exceptions to this immunity, none of which apply to the facts of this case. The trial court did not rely on any one of those exceptions, however, but found that "This case does not involve injury to person or property. Instead, the injury involved was the loss of a contract right to receive money. Therefore, the immunity statute does not apply." (Trial court opinion, p. 10.) In so finding, the trial court ignores the fact that a person can suffer economic injury in the loss of money just as he or she can suffer a physical injury in the form of a broken leg. A note evidencing a debt is property as surely as is real estate or any other tangible thing. The trial court committed clear error in finding that Beall was not immune from suit pursuant to the Tort Claims Act. Accordingly, we will instruct the trial court to enter j.n.o.v. in favor of Beall and against Antonis.

Liberati also asks us to grant j.n.o.v. or, in the alternative, a new trial, complaining that the trial court erred in not requiring the testimony of an expert to establish that he had a duty to Antonis to be sure that the mortgage and note were recorded properly and in not finding that Mouradian's fraud in transferring the property without disclosing Antonis' note and mortgage was an intervening cause of Antonis' harm.

■ The trial court, relying on *Prouty v. Marshall*, 225 Pa. 570, 74 A. 550 (1909), instructed the jury that it was Liberati's obligation, as Antonis' attorney, to verify that the note and mortgage were recorded properly after he delivered them to the Recorder's Office. Here is what our Supreme Court said in *Prouty:*

It is an easy matter for a mortgagee, or a grantee in each particular instance, either in person, *or by a representative,* to look at the record, and see that the instrument has been properly entered.... There is every reason why it should be made the duty of the mortgagee to see that his instrument is properly recorded. This will not in any way interfere with the principle that, when the instrument is certified as recorded, it shall import notice of the contents from the time of filing; but that must be understood as in connection with an instrument properly recorded. As said above, the record is notice of just what it contains, no more and no less. The obligation of seeing that the record of an instrument is correct must properly rest upon its holder. If he fails to protect himself, the consequence cannot justly be shifted upon an innocent purchaser.

225 Pa. at 575, 74 A. at 552 (emphasis added).

 Liberati argues that *Prouty* does not establish a standard of care for attorneys and that it was necessary to present expert testimony to establish that standard. Expert evidence, however, is not required when the issue of negligence is clear enough to be concluded as a matter of law. *Storm v. Golden,* 371 Pa.Super. 368, 538 A.2d 61 (1998). The trial court properly relied on *Storm* in finding that *Prouty's* admonition that "It is an easy matter for a mortgagee ... either in person, *or by a representative,* to look at the record, and see that the instrument has been properly entered." imposed an obligation on Liberati, by law, to ensure that the documents were properly recorded and that expert testimony was, therefore, not required.

Liberati's assertion that Mouradian's fraud is a superseding cause of Antonis harm defies simple logic. The fact is that Mouradian would not have been able to defraud Antonis absent Liberati's breach of his duty to Antonis. Liberati's breach was an antecedent cause of Antonis' harm.

Accordingly, the order of the trial court is affirmed to the extent that it denied Liberati's post-trial motions.

### ORDER

AND NOW, this 21st day of April 2003, the order of the Court of Common Pleas of Beaver County is reversed as it may apply to Janice Jeschke Beall and we remand this matter to the trial court with instructions to enter j.n.o.v. in her favor and against Michael Antonis; and It is further Ordered that the order of the Court of Common Pleas of Beaver County is affirmed as it may apply to Joseph J. Liberati.